UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
RAMEL THOMPSON,

                Plaintiff,

       - against -

C.O. SNORTLAND, C.O. GILMARTIN, C.O. PAPKA, and C.O. MAHAMADEO,

                Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-4743 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

Plaintiff Ramel Thompson, currently incarcerated at the Great Meadow Correctional Facility, filed an amended complaint in this *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 ("§ 1983") on February 28, 2020. For the reasons contained herein, the Court dismisses Plaintiff's claims as to Defendants Correction Officer ("C.O.") Gilmartin, C.O. Papka, and C.O. Mahamadeo for failure to state a claim upon which relief may be granted. Plaintiff's claims against Defendant C.O. Snortland may proceed as pleaded.

## BACKGROUND

Plaintiff initially filed this case on August 26, 2019. (Complaint ("Compl."), Dkt. 1.) The Court allowed the case to proceed against Defendant C.O. Snortland, but dismissed it as to the remaining Defendants for failure to state a claim. *Thompson v. Snortland*, No. 19-CV-4743 (PKC) (LB), 2019 WL 5086966, at *2–3 (E.D.N.Y. Oct. 10, 2019). In light of Plaintiff's *pro se* status, the Court granted him leave to amend his complaint to allege, if applicable, the personal involvement of Defendants C.O. Gilmartin, C.O. Mahamadeo, and C.O. Papka in the events that occurred on May 28, 2019, at Nassau County Correctional Center ("NCCC"). *Id.*

On February 28, 2020, Plaintiff filed an amended complaint[1] alleging that, on May 28, 2019, while Plaintiff was incarcerated at the NCCC, Defendant C.O. Snortland "unlocked all inmate cell doors," knowing "the danger this presents to those inmates who choose to remain in their cell[, given that] . . . many of the inmates on the block are there for extremely violent crimes."[2] (Amended Complaint ("Am. Compl."), Dkt. 12, at ECF[3] 2.) C.O. Snortland's actions enabled an inmate to enter Plaintiff's cell and physically attack him while Plaintiff was in bed. (*Id.* at ECF 2–3.) During the time of this incident, C.O. Gilmartin, C.O. Papka, and C.O. Mahamadeo were not visible near or at the officers' desk or the glass bubble that overlooks the cells. (*Id.* at ECF 2.) Following the attack, Plaintiff "limped out of [his] cell towards the officers['] desk," calling for the assistance of C.O. Gilmartin, C.O. Papka, and C.O. Mahamedeo, but they were not present. (*Id.* at ECF 3.) Bleeding profusely, Plaintiff eventually reached the dayroom, hoping that the correctional officers would be able to assist him there. (*Id.*) After waiting about ten to fifteen minutes, "Defendant Papka and other [officers] came to [Plaintiff's] assistance[,] . . . and shortly thereafter Plaintiff was transported to Nassau County University Medical Center where Plaintiff was treated for Plaintiff's wounds." (*Id.*) Plaintiff sustained "severe lacerations" to his right leg as a result of the attack, and seeks $300,000 in compensatory damages and the costs related to future medical and physical therapy treatments. (*Id.*)

---

[1] Plaintiff filed separate identical amended complaints against each Defendant in the same submission. (Dkts. 12–13.) The Court considers them together.

[2] At the pleadings stage of the proceeding, the Court must assume the truth of "all well pleaded, non-conclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing, *inter alia*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[3] "ECF" refers to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

## LEGAL STANDARD

Under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A, a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A.  The court is required to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  Similarly, pursuant to the *in forma pauperis* statute, a district court must dismiss a case if the court determines that the complaint "(1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

For a complaint to plead sufficient facts it must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## DISCUSSION

Plaintiff's claims for violations of his constitutional rights are cognizable under § 1983, which provides a vehicle for redressing the deprivation of civil rights. "Section 1983 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by

those parts of the United States Constitution and federal statutes that it describes.'" *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 438 (E.D.N.Y. 2012) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *accord Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  In order to maintain a civil rights action under § 1983, a plaintiff must allege two essential elements.  First, the conduct challenged must have been "committed by a person acting under color of state law." *Cornejo*, 592 F.3d at 127 (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citation omitted)).  Second, the conduct complained of "must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Cornejo*, 592 F.3d at 127; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

Additionally, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Brandon v. Kinter*, 938 F.3d 21, 36 (2d Cir. 2019) (internal quotation marks and citation omitted); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." (internal citations omitted)).

Plaintiff asserts a violation of his Eighth Amendment rights by the four individual officers, alleging that their "gross recklessness[] [and] failure to adequately supervise, train and protect the

4

plaintiff from the acts complained [of]" amount to a constitutional violation. (Am. Compl., Dkt. 12, at ECF 1, 3.) From the face of the Amended Complaint it is unclear whether Plaintiff was convicted at the time of the incident, and therefore whether his claims for deliberate indifference properly arise under the Eighth Amendment or Fourteenth Amendment.

**I.      Constitutional Rights**

    **A.      Eighth Amendment**

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement" and to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citations omitted); *see also id.* at 834 ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." (internal quotation marks and citation omitted)). "One aspect of this duty requires prison officials 'to protect prisoners from violence at the hands of other prisoners.'" *Elleby v. City of New York*, No. 14-CV-1436 (PKC) (JLC), 2014 WL 7242899, at *2 (S.D.N.Y. Dec. 16, 2014) (quoting *Farmer*, 511 U.S. at 833); *see also Smolen v. Brown*, No. 18-CV-7621 (KMK), 2020 WL 1233762, at *3 (S.D.N.Y. Mar. 13, 2020) ("[A] 'failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents' may amount to an Eighth Amendment violation." (quoting *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985))).

> To establish an Eighth Amendment violation in a case premised on inhumane or unsafe prison conditions, a plaintiff must satisfy an objective and a subjective element. The objective element consists in showing that the plaintiff has suffered a sufficiently serious deprivation, amounting to the denial of the minimal civilized measure of life's necessities. Specifically in the context of a failure-to-protect claim, the inmate must show that he [was] incarcerated under conditions posing a substantial risk of serious harm. To satisfy the subjective element, the inmate must show that prison officials acted with deliberate indifference to inmate health or safety. The subjective element is not satisfied unless the official knows of and disregards an excessive risk to inmate health or safety.

*Elleby*, 2014 WL 7242899, at *2 (quoting *Farmer*, 511 U.S. at 834, 837 (internal quotation marks and citations omitted)).

      **B.**      **Fourteenth Amendment**

If Plaintiff was not yet convicted at the time of the events at issue, his claim is properly brought under the Fourteenth Amendment. The standards to plead deliberate indifference for pre-trial and post-trial detainees are different. *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

> Unlike a violation of the Cruel and Unusual Punishments Clause, an official can violate the Due Process Clause of the Fourteenth Amendment without meting out any punishment, which means that the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm.
>
>             *    *    *
>
> Therefore, to establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety. In other words, the "subjective prong" (or "*mens rea* prong") of a deliberate indifference claim is defined objectively.

*Id.*; *see also Sanders v. City of New York*, No. 16-CV-7426 (PGG), 2018 WL 3117508, at *6 (S.D.N.Y. June 25, 2018) ("Allegations of 'mere negligence' do not suffice." (quoting *Darnell*, 849 F.3d at 36)).

**II.**      **Claim Against Defendant C.O. Snortland**

The Court reiterates its prior finding that Plaintiff adequately alleged Defendant C.O. Snortland's personal involvement in the incident in question and states a Section 1983 claim upon which relief may be granted, based on a violation of either Plaintiff's rights under the Eighth Amendment or Fourteenth Amendment. *See Thompson*, 2019 WL 5086966, at *2.

Plaintiff adequately alleges deliberate indifference as to C.O. Snortland under both the Eighth Amendment and Fourteenth Amendment standards. The objective standard under both the Eighth and Fourteenth Amendments is the same and requires the plaintiff to "show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30 (internal quotation marks and citations omitted). Plaintiff satisfies this element by pleading that there existed a substantial risk of serious harm when C.O. Snortland unlocked the cell block doors, knowing of the danger, and then failed to provide any supervision. (*See* Am. Compl., Dkt. 12, at ECF 2.) *See also Randle v. Alexander*, 960 F. Supp. 2d 457, 474 (S.D.N.Y. 2013) ("[I]n assessing whether the risk of an inmate's violence against other inmates is sufficiently serious, to trigger constitutional protection, the focus of inquiry must be . . . the existence of a substantial risk of serious harm." (internal quotation marks and citations omitted)).

Plaintiff also adequately alleges the Eighth Amendment's subjective element as to C.O. Snortland based on the same facts. According to the original and amended complaints, C.O. Snortland knew the obvious risk of allowing inmates accused of violent crimes to intermingle without supervision and disregarded it. *See Blandon v. Capra*, No. 17-CV-65 (KMK), 2017 WL 5624276, *9 (S.D.N.Y. Nov. 20, 2017) ("Plaintiff may [satisfy the subjective prong] by alleging facts plausibly suggesting 'that the risk was obvious.'" (quoting *Farmer*, 511 U.S. at 842)). This fact is sufficient for Plaintiff to state a claim under the Fourteenth Amendment as well. "The second element of a conditions of confinement claim brought under the Due Process Clause of the Fourteenth Amendment is the defendant's 'deliberate indifference' to any objectively serious condition of confinement." *Darnell*, 849 F.3d at 32. A pre-trial detainee may plead this element by alleging that the defendant "recklessly failed to act with reasonable care to mitigate the risk that

the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

### III. Claims Against Defendants C.O. Gilmartin, C.O. Mahamadeo, and C.O. Papka

Plaintiff's claims with respect to the remaining Defendants, however, fail, as Plaintiff does not allege any facts to support the personal involvement of Defendants C.O. Gilmartin, C.O Mahamadeo, or C.O. Papka in the deprivation of his civil rights. The only allegations Plaintiff makes as to these defendants are that on the day of the incident they were assigned to the area containing the glass bubble and desk from which correction officers supervise the unit's cells; that they were not visible at or near the desk or bubble; that they were not present to respond to Plaintiff's calls for assistance; and that they were not present for at least fifteen minutes after Plaintiff arrived in the dayroom. (*See* Am. Compl., Dkt. 12, at 2–3.) As previously discussed, the objective standard under both the Eighth and Fourteenth Amendments requires the plaintiff to "show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30 (internal quotation marks and citations omitted). Here, Plaintiff fails to allege that C.O.s Gilmartin, Mahamadeo, and Papka had any personal involvement in, or knowledge of, the actions that created those conditions.

Additionally, "[t]o be liable for a deprivation of [a] plaintiff's Fourteenth Amendment due process rights, the defendants must have acted purposefully or knowingly, or possibly [recklessly;] . . . negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Vargas v. N.Y.C. Dep't of Corrs.*, No. 17-CV-2544 (JGK), 2018 WL 3392873, at *2 (S.D.N.Y. July 12, 2018) (internal quotation marks omitted) (third alteration in original) (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015)). Plaintiff does not allege any purposeful, knowing,

8

or reckless conduct on behalf of Defendants C.O. Gilmartin, C.O Mahamadeo, or C.O. Papka. While a corrections officer leaving his or her post may reflect poor judgment, it does not, without more, reflect "deliberate indifference to inmate health or safety." *Elleby*, 2014 WL 7242899, at *2.

## CONCLUSION

For the reasons stated herein, Plaintiff's claims as to Defendants C.O. Gilmartin, C.O. Mahamadeo, and C.O. Papka are dismissed. The claims against Defendant C.O. Snortland may proceed. The Clerk of Court is respectfully directed to prepare a Summons for Defendant C.O. Snortland.[4] The United States Marshals Service is respectfully directed to serve the Summons and Complaint on Defendant C.O. Snortland as soon as practicable after the Chief Judge of the Eastern District of New York lifts the suspension of service by the United States Marshals Service. As provided for in Administrative Order No. 2020-19, the time from March 18, 2020 to June 15, 2020 is excluded from the 90-day period to accomplish service mandated under Federal Rule of Civil Procedure 4(m).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 2, 2020
      Brooklyn, New York

---

[4] To the extent Defendant C.O. Snortland is aware of Plaintiff's inmate status, he is directed to clarify whether Plaintiff was a pre-trial or post-trial detainee at the time of the events at issue in his responsive pleading to this matter.